UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRAIG ARMSTRONG, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:19-CV-04827 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| VERA E. MCDONNELL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Craig Armstrong was arrested in 2005 for failing to provide a change of address as allegedly required by the Illinois Sex Offender Registration Act.[1] R. 76, Second Am. Compl. (SAC) ¶¶ 14–15.[2] He pleaded guilty and was sentenced to one year in prison. *Id.* ¶ 22. But his conviction was vacated in 2018 after Armstrong discovered that he actually was not considered a sex offender under Illinois law. *Id.* ¶¶ 23–24. He now brings this lawsuit against the state prosecutors, Vera McDonnell (who is now retired) and Jorge Villareal, and the Cook County Sherriff's Deputies, Erik Roedel and Mark Caridei, who arrested and prosecuted Armstrong. *Id.* ¶¶ 5–8. He also sues Cook County for indemnification. *Id.* ¶¶ 9,74–76. Armstrong alleges violations of his constitutional rights under 42 U.S.C § 1983, as well as malicious prosecution under Illinois tort law. *Id.* ¶¶ 26–73. The Defendants move to dismiss all

_____

[1]The Court has subject matter jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

counts. R. 84, Mot. Dismiss. For the reasons explained in this Opinion, the motion to dismiss is granted in part and denied in part.[3]

## I. Background

For purposes of this motion, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in Armstrong's favor. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). In December 1997, Armstrong pleaded guilty to unlawful restraint in DeKalb County, Illinois Circuit Court. SAC ¶¶ 11–12. During the state court's plea colloquy and acceptance of the plea, the court did not tell Armstrong that he was required to register as a sex offender, nor did the court make any mention of the Illinois Sex Offender Registration Act. *Id.* ¶ 12.

Fast forwarding to 2005, Armstrong was arrested in Cook County by Sherriff's Deputies Roedel and Caridei. Roedel and Caridei represented to Armstrong that he qualified as a sex offender and thus had violated the Sex Offender Registration Act when he failed to provide a change of address. SAC ¶¶ 14–15. Armstrong told the Defendants that he was not a sex offender, but they ignored him and did not include Armstrong's denial in their reports. *Id.* ¶ 16. Assistant State's Attorneys McDonnell

---

[3]The parties mistakenly refer to the operative complaint as the "second" amended complaint when, in reality, it constitutes the third amended complaint. To clarify, Armstrong filed his original *pro se* complaint on July 15, 2019. R. 1. It was dismissed without prejudice four days later on July 19. R. 6. Armstrong filed a *pro se* amended complaint on October 25, 2019. R. 8. The Court then recruited *pro bono* counsel to evaluate whether to propose a second amended complaint. R. 15. Armstrong's counsel did file a second amended complaint on August 2, 2020. R. 29. Finally, on October 21, 2021, Armstrong filed what should have been titled his "third" amended complaint but inadvertently mislabeled it as the second amended complaint. The Court will use the nomenclature employed by the parties, referring to the operative complaint as the second amended complaint.

and Villareal then filed charges against Armstrong for failing to report a change of address. *Id.* ¶ 21.

Unsure if he was a sex offender, and based on the representations made by the Defendants, Armstrong pleaded guilty and was sentenced to one year in prison. SAC ¶ 22. He later discovered that he actually was not a sex offender, and he successfully moved to have the conviction vacated; the state court vacated the conviction in February 2018. *Id.* ¶¶ 23–24.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

#### A. Prosecutorial Absolute Immunity

In Counts 1 and 4, Armstrong alleges that State's Attorneys McDonnell and Villareal fabricated evidence against him. SAC ¶¶ 26–27, 32–33. He also advances *Brady* claims against McDonnell and Villareal for suppression of exculpatory evidence in Counts 5 and 8.[5] *Id.* ¶¶ 34–35, 40–41. These claims are brought under § 1983 as violations of Fourteenth Amendment due process. McDonnell and Villareal argue that Armstrong fails to sufficiently allege that they acted outside of their prosecutorial functions, which are protected by absolute immunity. Mot. Dismiss at 6.

Prosecutors enjoy absolute immunity from suit when they are "acting within the scope of their prosecutorial duties." *Bianchi v. McQueen*, 818 F.3d 309, 318 (7th Cir. 2016) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976)). The test to determine whether prosecutors are entitled to absolute immunity or, alternatively, qualified immunity is *functional*—rather than looking at mere labels. *Buckley v.*

---

[5]Armstrong mistakenly labels his Count 8 as a Due Process Fabrication Claim against Defendant Jorge Villareal. Based on the allegations contained in Count 8, its placement alongside *Brady* claims against the other Defendants, and the fact that Count 4 already alleges a fabrication-of-evidence claim against Villareal, Count 8 clearly constitutes a *Brady* suppression-of-exculpatory-evidence claim against Villareal. SAC ¶¶ 40–41.

*Fitzsimmons*, 509 U.S. 259, 269 (1993). The right question to ask is whether the relevant actions of prosecutors were investigatory—like those performed by police officers and other law enforcement—or prosecutorial, that is, as advocates for the State. *Id.* at 273. "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." *Id.* So, when prosecutors act like investigators or police officers, they are entitled only to qualified immunity; when they act as advocates, they receive absolute immunity.

Armstrong argues that he sufficiently alleged that State's Attorneys McDonnell and Villareal acted beyond the scope of their prosecutorial absolute immunity. R. 95, Pl.'s Resp. at 5–7. But Armstrong is wrong. Armstrong alleges that State's Attorney Villareal falsely represented to the grand jury that Armstrong was a sex offender and that Villareal instigated, without probable cause and based on false information provided by him, the charging of Armstrong. SAC ¶¶ 18, 21. As to State's Attorney McDonnell, Armstrong alleges that she investigated the case and falsely alleged and represented that he was a sex offender. *Id.* ¶¶ 17, 19. Armstrong also alleges that McDonnell instigated, without probable cause and based on false information provided by her, the charging of Armstrong. *Id.* ¶ 21.

But all of those alleged acts qualify as acts in pursuit of prosecutorial functions. First, presenting to a grand jury, as Villareal did, is a core prosecutorial function clearly protected by absolute immunity. *See Bianchi*, 818 F.3d at 318–19. Second, the

remaining allegations about McDonnell and Villareal are insufficient to put McDonnell and Villareal on notice of anything other than yet more core prosecutorial functions. Armstrong alleges that McDonnell and Villareal instigated his charging based on false information provided by them but does not notice what the false information was, or whether that information was presented by them in a pre-prosecutorial, investigatory role not protected by absolute immunity. Similarly, Armstrong's bare allegation that McDonnell investigated the case does not sufficiently describe what she did—as a *factual* matter—that might have been outside of her prosecutorial functions. Simply stating that McDonnell investigated the case—to imply that she acted as an investigator and exceeded her prosecutorial functions—is a bare legal conclusion that the Court is not required to accept as true.[6] *See Iqbal*, 556 U.S. at 678–79.

Armstrong also argues that his allegations are sufficient because he alleged that McDonnell and Villareal arrested him without probable cause, an action unprotected by absolute immunity. Pl.'s Resp. 6. But again, his simple statement that he was arrested without probable cause, without any other allegations of fact, constitutes a bare legal conclusion.[7] *See Iqbal*, 556 U.S. at 678–79. In short, Armstrong's

---

[6]Armstrong also proposes that McDonnell and Villareal failed to properly investigate the case against him and thus did not act like prosecutors. Pl.'s Resp. at 6. But the relevant inquiry on the immunity test is not whether McDonnell and Villareal properly investigated; instead, the question is whether they ever carried out investigations *beyond* their prosecutorial functions. *See Buckley*, 509 U.S. at 273.

[7]Armstrong and the Defendants argue about whether Armstrong's original *pro se* complaint contains sufficient allegations of fact to describe a lack of probable cause upon arrest. Mot. Dismiss at 6–7; Pl.'s Resp. at 6. But the past complaints, including the original *pro se* complaint, have been entirely superseded by the later pleadings and cannot be considered by the Court. *See Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782–83 (7th Cir. 2013) ("[F]acts or admissions from an earlier complaint that are not included in a later complaint cannot be considered on a motion to dismiss.").

allegations do not provide McDonnell and Villareal any context to understand what they did that was outside of their prosecutorial functions—all of which are protected by absolute immunity.

The due process claims in Counts 1, 4, 5, and 8 against McDonnell and Villareal are dismissed without prejudice. If Armstrong can fix his allegations about the State's Attorneys and navigate around absolute immunity, then he may propose the filing of another amended complaint.

## B. Fabrication of Evidence

In Counts 2 and 3, Armstrong claims that Sheriff's Deputies Roedel and Caridei fabricated evidence against him in violation of his Fourteenth Amendment due process rights. SAC ¶¶ 28–31. Roedel and Caridei move to dismiss those counts because, they argue, Armstrong offers only conclusory statements and does not allege that the deputies knew that their representations that he was a sex offender were false. Mot. Dismiss at 10.

Fabricating or manufacturing evidence—including false testimony—that is then used to deprive an individual of his liberty constitutes a violation of Fourteenth Amendment due process. *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 344 (7th Cir. 2019); *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012). Armstrong argues that he has sufficiently alleged fabrication-of-evidence claims against Roedel and Caridei. Pl.'s Resp. at 7–8. Specifically, Armstrong alleges that Roedel and Caridei falsely represented that he was a registered sex offender and that he told them

that he was not, but that Roedel and Caridei ignored him and did not include his denial in their reports. SAC ¶¶ 15–16.

Those allegations are enough at the pleading stage. First, Armstrong's allegation that Roedel and Caridei falsely represented that he was a sex offender clearly implies that Armstrong is asserting that the deputies *knew* that the representation was false. Roedel and Caridei argue otherwise, Mot. Dismiss at 8–9, but as Armstrong points out, that argument only attacks Armstrong's grammatical and word-placement choices rather than the substance of his allegations. Pl.'s Resp. at 7–8. To say that Roedel and Caridei falsely represented his sex offender status is close enough—at the pleading stage—to asserting that they knowingly lied about his sex offender status.[8]

Second, when giving Armstrong the benefit of reasonable inferences, the allegations about Roedel and Caridei did—or failed to do—during the investigation add to the sufficiency of the claim. It is reasonable to infer, especially given that Armstrong told them that he was *not* a sex offender, that Roedel and Caridei would have investigated his sex-offender status and realized that he was not a sex offender, and yet chose to proceed with a fabrication anyway. This inference is supported by the

---

[8]Roedel and Caridei again refer to Armstrong's original *pro se* complaint to argue that Armstrong himself admits in that complaint that the Sherriff's Deputies genuinely believed that Armstrong was, in fact, a sex offender, and thus did not know that their representations were false. Mot. Dismiss at 9–10. But the Court cannot refer to Armstrong's original *pro se* complaint, because it has been superseded by later pleadings—at least for purposes of evaluating the dismissal motion. *See Chuhak & Tecson, P.C.*, 725 F.3d at 782–83. Having said that, Armstrong ought to be realistic about how damaging the earlier allegation would be at trial, and ought to more generally assess how he would prove the knowledge-of-falsity allegation when the burden of proof is on him and he does not get the benefit of viewing the evidence in the light most favorable to him.

alleged facts, accepted on a motion to dismiss, that they ignored Armstrong's asser-

tion that he was not a sex offender and indeed even purposely did not include his

denial in their reports to aid in their alleged fabrication. The fabrication-of-evidence

claims in Counts 2 and 3 against Roedel and Caridei survive.

## C. *Brady*

In Counts 6 and 7, Armstrong alleges that deputies Roedel and Caridei sup-

pressed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

SAC ¶¶ 36–39. Roedel and Caridei move to dismiss the *Brady* claims, arguing that

Armstrong possessed the allegedly suppressed information, namely, that he was not

a sex offender. Mot. Dismiss at 11–12. The deputies also contend that the *Brady*

claims are insufficiently alleged because they are threadbare recitals of the cause of

action. Lastly, the deputies argue (in their reply brief) that Armstrong failed to plead

that the evidence that he was not a sex offender was not otherwise available to him.[9]

R. 96, Defs.' Reply at 8–9.

To win a *Brady* claim (bearing in mind that this is just the pleading stage), "a

plaintiff must demonstrate that the evidence in question was favorable to him, the

police suppressed the favorable evidence, and prejudice ensued because the sup-

pressed evidence was material." *Anderson v. City of Rockford*, 932 F.3d 494, 504 (7th

---

[9]Even if persuasive, this last argument is likely waived because it was only raised in the reply brief. *See Dexia Crédit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."). With that said, Armstrong might have difficulty showing that the exculpatory evidence was not otherwise available to him given that he was obviously present at his own 1997 plea colloquy and that he had a lawyer and subpoena power to request information about the unlawful-restraint plea before he pleaded guilty to failing to report a change of address.

Cir. 2019) (cleaned up). Suppressed means that evidence was kept from a criminal defendant until it was too late to make use of it and the evidence was not otherwise available to the defendant through the exercise of reasonable diligence. *Collier v. Davis*, 301 F.3d 843, 850 (7th Cir. 2002) (cleaned up). "Evidence cannot be said to have been suppressed in violation of *Brady* if it was already known to the defendant." *Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017) (cleaned up).

Here, the deputies argue that Armstrong pleaded himself out of *Brady* claims, because Armstrong alleges that he told the deputies that he was not a sex offender, SAC ¶ 16, and thus by necessity he must already have known of the exculpatory evidence that was supposedly suppressed. Mot. Dismiss at 11. Armstrong responds that he did not allege that had possession of any exculpatory *evidence*. Pl.'s Resp. at 8–9. Armstrong is correct. Taking reasonable inferences in Armstrong's favor, Armstrong does not acknowledge that he knew, as a matter of law, that he was not a sex offender. SAC ¶ 16. Otherwise, he would not have pleaded guilty to failing to report a change of address. SAC ¶ 22. Yes, Armstrong denied being a sex offender, but that denial does not unavoidably translate to an admission that he possessed legal evidence that he was not a sex offender.

The *Brady* allegations do fail, however, to point out what exculpatory evidence was withheld from Armstrong. Armstrong simply claims, without any other factual allegations, that the Defendants "withheld from Craig Armstrong the *exculpatory information* that he was not a sex offender." SAC ¶ 20 (emphasis added). It is not possible to identify what specific piece or pieces of exculpatory evidence the Court is

being asked to consider as suppressed. "Exculpatory information" is merely a generic label. In other words, Roedel and Caride have not received sufficient notice of what it is that they are accused of hiding. Armstrong could have pleaded, for example, that he personally did not remember the details of his 1997 unlawful restraint guilty plea, and that the Defendants suppressed the plea colloquy in which the state judge did not tell Armstrong that he was required to register as a sex offender.

Instead of setting forth facts, Armstrong instead simply provides conclusory allegations tracking the legal elements of a *Brady* claim. *See Iqbal*, 556 U.S. at 678 (explaining that a complaint must contain more than "naked assertion[s] devoid of further factual enhancement") (cleaned up)). Because Armstrong alleges no facts to support a generic and bare legal conclusion that exculpatory evidence was withheld from him, Counts 6 and 7 are dismissed without prejudice.

### D. State Law

Finally, Counts 9 to 12 consist of Illinois malicious-prosecution claims against the Assistant State's Attorneys and the Sheriff's Deputies. SAC ¶¶ 42–73. In Count 13, Armstrong requests indemnification from Cook County for the actions of its employees while acting within the scope of their employment. SAC ¶¶ 74–76. Given that all of the federal claims against Assistant State's Attorneys McDonnell and Villareal have been dismissed without prejudice, the Court will relinquish supplemental jurisdiction of state law claims against them and Cook County as their employer if Armstrong is unable to successfully file a new amended complaint. *See Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (explaining that "when the

11

federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims" (cleaned up)). If Armstrong does file a new amended complaint, then McDonnell and Villareal will have the chance to move to dismiss all claims against them, including the state claims.

In contrast, because the § 1983 fabrication-of-evidence claims survive against Sheriff's Deputies Roedel and Caridei, the Court will retain supplemental jurisdiction over the state law claims against Roedel and Caridei, as well as the indemnification claim against Cook County as their employer.

## IV. Conclusion

The Defendants' motion to dismiss is granted in part and denied in part. The following claims are dismissed without prejudice: the fabrication-of-evidence claims against McDonnell and Villareal (Counts 1 and 4) and all *Brady* suppression claims (Counts 5, 6, 7, and 8). What remains currently intact are the fabrication claims against Roedel and Caridei (Counts 2 and 3); the Illinois malicious-prosecution claims (Counts 9 to 12); and the indemnification claim against Cook County (Count 13). Armstrong may file another amended complaint by October 17, 2022. If Armstrong does not file an amended complaint, then the dismissals without prejudice will convert to dismissals with prejudice. If and when all federal claims against McDonnell and Villareal are dismissed with prejudice, then the Court will also relinquish jurisdiction

over the state law claims against McDonnell and Villareal, as well as Cook County as their employer.

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: September 29, 2022